**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| US FOODS, INC., <br><br>       Plaintiff, <br><br>v. <br><br>WILLIAM T. KANE a/k/a BILL T. KANE, an individual, and RONALD G. LINABURG, D.D.S, an individual, <br><br>       Defendants. <br><br>**JURY TRIAL DEMANDED.** | CIVIL ACTION <br><br> Case No. 2:19-cv-946-JFC |

## ANSWER WITH AFFIRMATIVE DEFENSES AND CROSSCLAIM

AND NOW, comes Defendant, Ronald G. Linaburg, D.M.D.,[1] by and through his attorneys, Michael P. Oliverio, Esq., John J. Heurich, Jr., Esq. and The Lynch Law Group, LLC, and hereby files this Answer with Affirmative Defenses and Crossclaims to Plaintiffs' Complaint, and in support thereof, avers as follows:

## THE PARTIES

1. Denied. Defendant is without knowledge or information sufficient to admit or deny the allegations of Paragraph 1.

2. Denied. Defendant is without knowledge or information sufficient to admit or deny the allegations of Paragraph 2.

3. Admitted.

---

[1] Dr. Linaburg has at all material times possessed, and has held himself out as possessing, a Doctor of Medical Dentistry (D.M.D.) degree.

## JURISDICTION AND VENUE

4. Denied. The allegations contained in Paragraph 4 contain conclusions of law to which no response is required. To the extent that a response is required, the allegations are denied.

5. Denied. The allegations contained in Paragraph 5 contain conclusions of law to which no response is required. To the extent that a response is required, the allegations are denied.

## GENERAL ALLEGATIONS

6. Denied as stated. The allegations contained in Paragraph 6 are specifically denied to the extent that the allegations imply that any food and food-related products and services were delivered to 5171 Campbells Land Co., Inc. ("Campbells") prior to January 31, 2018—the date on which Campbells acquired a chain of 27 Perkins Franchise restaurant locations from Unique Ventures Group, LLC ("UVG").

7. Admitted in part, denied in part. It is admitted only that Campbells signed the Customer Account Application (the "Agreement"). The remainder of the allegations contained in Paragraph 7 contain conclusions of law to which no response is required. To the extent that a response is required, the allegations are denied.

8. Denied. The allegations contained in Paragraph 8 contain conclusions of law to which no response is required. To the extent a response is required, the allegations are denied. By way of further denial, the remainder of the allegations contained in Paragraph 8 are denied as stated as representing an incomplete and potentially inaccurate attempt to summarize a document that speaks for itself.

9. Denied. The allegations contained in Paragraph 9 contain conclusions of law to which no response is required. To the extent a response is required, the allegations are denied. By way of further denial, the remainder of the allegations contained in Paragraph 9 are denied as stated

as representing an incomplete and potentially inaccurate attempt to summarize a document that speaks for itself.

10. Denied. The allegations contained in Paragraph 10 contain conclusions of law to which no response is required. To the extent a response is required, the allegations are denied. By way of further denial, the remainder of the allegations contained in Paragraph 10 are denied as stated as representing an incomplete and potentially inaccurate attempt to summarize a document that speaks for itself.

11. Admitted in part, denied in part. It is admitted only that the Agreement contains a pre-printed, adhesive guaranty which was signed by Dr. Linaburg and William Kane ("Kane"). The remainder of the allegations contained in Paragraph 11 contain conclusions of law to which no response is required. To the extent a response is required, the allegations are denied. By way of further denial, the remainder of the allegations contained in Paragraph 11 are denied as stated as representing an incomplete and potentially inaccurate attempt to summarize a document that speaks for itself.

12. Denied. The allegations contained in Paragraph 12 contain conclusions of law to which no response is required. To the extent a response is required, the allegations are denied. By way of further denial, the remainder of the allegations contained in Paragraph 12 are denied as stated as representing an incomplete and potentially inaccurate attempt to summarize a document that speaks for itself.

13. Denied. The allegations contained in Paragraph 13 contain conclusions of law to which no response is required. To the extent a response is required, the allegations are denied. By way of further denial, the remainder of the allegations contained in Paragraph 13 are denied as

stated as representing an incomplete and potentially inaccurate attempt to summarize a document that speaks for itself.

14. Admitted in part, denied in part. It is admitted only that food was ordered and delivered. The remainder of the allegations contained in Paragraph 14 contain conclusions of law to which no response is required. To the extent a response is required, the allegations are denied. By way of further denial, the remainder of the allegations contained in Paragraph 14 are denied as stated as representing an incomplete and potentially inaccurate attempt to summarize unattached, written documents that speaks for themselves.

15. Denied. The allegations contained in Paragraph 15 contain conclusions of law to which no response is required. To the extent a response is required, the allegations are denied. By way of further denial, the remainder of the allegations contained in Paragraph 15 are denied as stated as representing an incomplete and potentially inaccurate attempt to summarize a document that speaks for itself.

16. Denied. The allegations contained in Paragraph 16 contain conclusions of law to which no response is required. To the extent a response is required, the allegations are denied.

17. Denied. The allegations contained in Paragraph 17 contain conclusions of law to which no response is required. To the extent a response is required, the allegations are denied. By way of further denial, the remainder of the allegations contained in Paragraph 17 are denied as stated as representing an incomplete and potentially inaccurate attempt to summarize a document that speaks for itself.

18. Denied. The allegations contained in Paragraph 18 contain conclusions of law to which no response is required. To the extent that a response is required, the allegations are denied.

## COUNT I
## BREACH OF GUARANTY

19. Defendant incorporates by reference the answers to all preceding Paragraphs as though fully set forth herein.

20. Denied. The allegations contained in Paragraph 20 contain conclusions of law to which no response is required. To the extent that a response is required, the allegations are denied. By way of further denial, the remainder of the allegations contained in Paragraph 20 are denied as stated as representing an incomplete and potentially inaccurate attempt to summarize a document that speaks for itself.

21. Denied. The allegations contained in Paragraph 21 contain conclusions of law to which no response is required. To the extent that a response is required, the allegations are denied.

22. Admitted in part, denied in part. It is admitted only that Campbells received goods and services from US Foods. The remainder of the allegations contained in Paragraph 22 contain conclusions of law to which no response is required. To the extent that a response is required, the allegations are denied.

23. Admitted in part, denied in part. It is admitted only that invoices were submitted to Campbells. The remainder of the allegations contained in Paragraph 23 contain conclusions of law to which no response is required. To the extent that a response is required, the allegations are denied.

24. Denied.

25. Admitted in part, denied in part. It is admitted only that Dr. Linaburg and Kane signed a pre-printed, form guaranty in the nature of a contract of adhesion. The remainder of the allegations contained in Paragraph 25 contain conclusions of law to which no response is required. To the extent that a response is required, the allegations are denied. By way of further denial, the

remainder of the allegations contained in Paragraph 25 are denied as stated as representing an incomplete and potentially inaccurate attempt to summarize a document that speaks for itself.

26. Denied. The allegations contained in Paragraph 26 contain conclusions of law to which no response is required. To the extent that a response is required, the allegations are denied. By way of further denial, the allegations contained in Paragraph 26 are denied as stated as representing an incomplete and potentially inaccurate attempt to summarize a document that speaks for itself.

27. Denied. The allegations contained in Paragraph 27 contain conclusions of law to which no response is required. To the extent that a response is required, the allegations are denied. By way of further denial, the allegations contained in Paragraph 27 are denied as stated as representing an incomplete and potentially inaccurate attempt to summarize a document that speaks for itself.

28. Denied as stated. The allegations contained in Paragraph 28 are denied as stated as representing an incomplete and potentially inaccurate attempt to summarize a document that speaks for itself.

29. Denied. The allegations contained in Paragraph 29 contain conclusions of law to which no response is required. To the extent that a response is required, the allegations are denied.

30. Denied. The allegations contained in Paragraph 30 contain conclusions of law to which no response is required. To the extent that a response is required, the allegations are denied.

31. Denied. The allegations contained in Paragraph 31 contain conclusions of law to which no response is required. To the extent that a response is required, the allegations are denied.

## COUNT II
## ACCOUNT STATED

32. Defendant incorporates by reference the answers to all preceding Paragraphs as though fully set forth herein.

33. Admitted.

34. Admitted in part, denied in part. It is admitted only that Campbells received goods from US Foods and that invoices were submitted. The remainder of the allegations contained in Paragraph 34 contain conclusions of law to which no response is required. To the extent that a response is required, the allegations are denied. By way of further denial, the remainder of the allegations contained in Paragraph 34 are denied as stated as representing an incomplete and potentially inaccurate attempt to summarize written, unattached documents that speak for themselves.

35. Denied. Defendant is without knowledge or information sufficient to admit or deny the allegations of Paragraph 35.

36. Denied. The allegations contained in Paragraph 36 contain conclusions of law to which no response is required. To the extent that a response is required, the allegations are denied.

37. Admitted in part, denied in part. It is admitted only that Campbells received invoices from US Foods. The remainder of the allegations contained in Paragraph 37 are denied.

38. Denied. The allegations contained in Paragraph 38 contain conclusions of law to which no response is required. To the extent that a response is required, the allegations are denied. By way of further denial, the remainder of the allegations contained in Paragraph 38 are denied as stated as representing an incomplete and potentially inaccurate attempt to summarize a document that speaks for itself.

39. Denied. The allegations contained in Paragraph 39 contain conclusions of law to which no response is required. To the extent that a response is required, the allegations are denied.

WHEREFORE, Defendant, Ronald G. Linaburg, D.M.D., respectfully requests that judgment be entered in his favor in an amount to be determined at trial, for his attorney's fees and costs, and for such other and further relief as the Court may deem just and proper.

## AFFIRMATIVE DEFENSES

40. Defendant incorporates by reference the answers to all preceding Paragraphs as though fully set forth herein.

41. On or about January 31, 2018, Campbells purchased from UVG a chain of 27 Perkins Franchise restaurants.

42. On or about January 31, 2018, Campbells entered into franchise agreements with Perkins Marie Callenders ("PMC") permitting Campbells to operate the 27 Perkins Franchise restaurants.

43. Campbells paid in excess of $7 million to acquire the PMC franchise locations in the auction presided over by the United States Bankruptcy Court for the Western District of Pennsylvania.

44. Less than six months later, Campbells' franchise agreement with PMC was terminated, and a temporary license was issued by PMC to allow Campbells to continue operating its 27 locations.

45. At the same time, Campbells became financially insolvent and unable to pay its debts as they became due, accruing massive accounts payable balances to vendors, lenders, and government entities.

46. Campbells ultimately sought Chapter 11 bankruptcy protection in July 2019.

47. While the Campbells bankruptcy is still pending, the majority of Campbells' assets have been sold off at a total price of less than $1 million.

48. In the roughly 18 months that Campbells operated PMC franchise restaurants, the company managed to accrue over $10 million of unpaid and unsecured debt.

49. Dr. Linaburg, as the sole investor and source of capital contributions to Campbells, has lost several million dollars as the result of the bankruptcy of Campbells.

50. In addition, Dr. Linaburg served as the principal guarantor for most of the debt accumulated by Campbells, exposing him to over ten million dollars in potential liability.

51. While Dr. Linaburg served as the sole investor and source of capital for Campbells and was represented to vendors (including Plaintiff) as a "Principal," officer, partner, or controlling owner of Campbells, Dr. Linaburg did not in fact possess any ownership stake in the company.

52. Instead, a limited partnership controlled by Dr. Linaburg was given a 6% ownership interest in Campbells, with William Kane exercising effective ownership and control of 94% of the company's stock.

53. Through systemic and repeated fraud, misrepresentation, obfuscation, and oppression, William Kane was able to deprive Dr. Linaburg of any meaningful ownership or control over Campbells.

54. Instead, Kane ran Campbells as his personal piggy bank and fiefdom, giving lucrative salaries to his family and friends despite them performing little or no work for the company.

55. Kane also sucked cash out of Campbells through a number of schemes intended to defraud creditors, the United States government, and Dr. Linaburg.

56. Plaintiff was a participant in certain of those schemes, whether in a knowing or innocent capacity.

57. By way of example, when Campbells obtained the franchise license from PMC, PMC provided Campbells with a list of approved food providers, which included Plaintiff.

58. Also as part of the franchise relationship between PMC and Campbells, PMC provided approved menus and food items to Campbells.

59. Plaintiff was aware that Campbells submitted the Agreement in connection with Campbells' operating of the 27 Perkins Franchise locations. *See* Ex. A to Pl's Compl., at p. 1.

60. Plaintiff was also aware that any relationship based on the Agreement that resulted between it and Campbells pertained to Campbells' operation of the Perkins Franchise locations.

61. Upon information and belief and at all material times, Plaintiff knew that Campbells could only order food items and services that were approved by PMC.

62. Upon information and belief and at all material times, Plaintiff knew that it was only to provide Campbells with the food items and services that were approved by PMC.

63. From the time Campbells submitted the Agreement to present, Kane routinely ordered food items and services from Plaintiff which were not approved by PMC.

64. Upon information and belief and at all material times, Plaintiff knew that certain food items and services ordered by Kane had not been, and would not be, approved by PMC.

65. Each time Kane would order food items and services that were not approved by PMC, Plaintiff would deliver to Campbells such food items and services knowing that such had not been, and would not be, approved by PMC. Upon information and belief, such deliveries occurred in connection with the deliveries of PMC-approved food items and services.

66. Such non-approved food items and services fall outside the scope of the Agreement and the guaranty signed by Dr. Linaburg, and Dr. Linaburg did not ratify or approve the delivery of non-PMC-approved foot items and services by Plaintiff.

67. Upon information and belief, the non-PMC-approved food items ordered by Kane and provided by Plaintiff were often sold "under the table" to generate cash that was delivered to Kane for his personal use, or those food items were used by Kane and his personal associates as their personal property.

68. Upon information and belief, Kane conspired with as-yet-unknown employees of Plaintiff to facilitate this scheme.

69. Upon information and belief, Kane made payments to employees of Plaintiff in cash with the understanding and intention that these payments would be retained, in whole or part, by those employees as a bribe or kickback.

70. Upon information and belief, it was through these schemes that Kane induced Plaintiff to continue to deliver unapproved food items despite repeated notices from PMC.

71. Upon information and belief, these schemes also enabled Campbells to continue to receive food shipments from Plaintiff despite payment for those deliveries being in arrears, often well over 90 days.

72. Upon information and belief, these schemes also induced Plaintiff not to require Campbells to make payment on delivery for all food shipments.

73. At the same time, upon information and belief, Plaintiff was aware of numerous violations by Kane of violations of the conditions of Campbell's franchise license with PMC, including but not limited to Kane's ordering of foot items and services which were not approved by PMC.

74. Upon information and belief, Plaintiff had communications with PMC throughout the period that Plaintiff supplied food items and services to Campbells, through which Plaintiff informed PMC of Kane's numerous violations of the franchise license.

75. Upon information and belief, Plaintiff therefore knew that Campbell's franchise license was subject to termination and that all deliveries to Campbells were at risk of nonpayment.

76. Despite this information, Plaintiff continued to supply food items and services to Campbells on credit and without regard for Campbells' ability to pay, without permission or ratification by Dr. Linaburg.

77. Upon information and belief, Plaintiff continued to supply food items and services to Campbells far beyond the point that it was undeniable that Campbells' business was not financially solvent, effectively requiring guarantors to cover such orders despite the deliveries producing no material value to guarantors or Campbells.

78. Due to the foregoing, Plaintiff's claims are barred, in whole or in part.

79. Plaintiff's participation in the schemes described herein, as well as Plaintiff's otherwise negligent performance of the Agreement, constitutes a material breach of its obligations which relieves Dr. Linaburg of any obligation of performance under the Guaranty.

80. Plaintiff's claims are barred, in whole or in part, because Plaintiff provided food items and services to Campbells which were not approved items by PMC, were not intended to be used legitimately in Campbells' business, and were not intended to be covered in the scope of Dr. Linaburg's Guaranty.

81. Plaintiff's claims are barred, in whole or in part, by the doctrines of bad faith and/or unclean hands.

82. Plaintiff's claims are barred, in whole or in part, because the guaranty relied upon by Plaintiffs to assert personal liability against Dr. Linaburg was procured from Dr. Linaburg through fraud on the part of William Kane, and such fraud was known or should have been known to Plaintiff at the time of the delivery of the guaranty.

83. In the alternative, Plaintiff's claims are barred, in whole or in part, because Plaintiff became aware of William Kane's fraud against Dr. Linaburg during the performance of the Agreement, and failed to take appropriate action to alert Dr. Linaburg to the fraud or otherwise provide Dr. Linaburg the opportunity to mitigate his damages.

84. Plaintiff's alleged damages are the result of acts or omissions committed by non-parties to this action over whom Dr. Linaburg had no responsibility, authority or control.

85. Plaintiff's claims are barred, in whole or in part, by Plaintiff's failure to mitigate its damages.

86. Plaintiff's alleged damages are the result of acts or omissions committed by Plaintiff.

87. Plaintiff's claims are barred, in whole or in part, because the guaranty is unenforceable.

88. Plaintiff's claims are barred, in whole or in part, by the doctrine of unconscionability.

89. Plaintiff's claims are barred, in whole or in part, by the doctrine of waiver.

90. Plaintiff's claims are barred, in whole or in part, by accord and satisfaction.

91. Plaintiff's claims are barred, in whole or in part, by the doctrine of laches.

92. Plaintiff's claims are barred, in whole or in part, by failure of consideration.

93. Plaintiff's demands for intertest are usurious and violate state and federal laws.

94. Plaintiff's claims are barred, in whole or in part, by the doctrine of *scienti et volenti non fit injuria*.

95. Plaintiff's claims are barred, in whole or in part, and must be reduced due to payment, set off and release.

96. Plaintiff's claims are barred, in whole or in part, by Plaintiff's breach of its duty of good faith and fair dealing with guarantor, Dr. Linaburg.

97. Dr. Linaburg expressly reserves the right to amend and/or add additional answers, affirmative defenses and/or counterclaims at a later date based upon further investigation and discovery.

WHEREFORE, Defendant, Ronald G. Linaburg, D.M.D., respectfully requests that judgment be entered in his favor, and for such other and further relief as the Court may deem just and proper.

## CROSSCLAIM

*Ronald G. Linaburg, D.M.D. v. William T. Kane*
*(Contribution and Indemnification)*

98. Defendant and Crossclaim Plaintiff Dr. Linaburg incorporates by reference and re-alleges each and every one of the allegations set forth in paragraphs 41 through 96 above as though fully set forth herein.

99. For the sole purpose of this Crossclaim, and without admitting the averments thereof, Dr. Linaburg incorporates the allegations in the Complaint that are made against Kane.

100. On or about January 31, 2018, Campbells purchased from UVG a chain of 27 Perkins Franchise restaurants.

101. Dr. Linaburg provided all unencumbered investment contributions to Campbells to fund the acquisition of the Perkins Franchise restaurant.

102. While Kane represented publicly (outside the company) as well as internally that he made a multi-million dollar contribution to the business as well, in truth all funds contributed by Kane were in the form of loans acquired from third parties, all of which were treated as loans to Campbells and which were paid back (several with exorbitant and usurious interest) by the company from operational proceeds.

103. As a result, even though Dr. Linaburg was rightfully entitled to all or at least the majority of equity interests in Campbells and the Perkins Franchise restaurants, Kane treated Dr. Linaburg as a minority (6%) shareholder, only.

104. Moreover, Kane represented that forty percent (40%) of the equity of Campbells belonged to Tim Weaver, Kane's nephew, despite the fact that Mr. Weaver had made no equity contributions of any kind to the company and had no involvement in its business or the acquisition of the Perkins Franchise restaurants.

105. Kane likewise represented that fourteen percent (14%) of the equity of Campbells belonged to Krissy Kochis, a longtime female associate of Kane, despite the fact that Ms. Kochis had made no equity contributions of any kind to the company and had no involvement in its business or the acquisition of the Perkins Franchise restaurants.

106. Despite Kane owning only forty percent (40%) of the equity of Campbells even according to his own fraudulent documents, and despite Kane having made no actual equity contribution to the company in connection with the acquisition of the Perkins Franchise restaurants, Kane operated the company as if he were its sole shareholder.

107. Through systemic oppression and fraud, Kane deprived Dr. Linaburg of any effective participation in the ownership or control of Campbells.

108. Specifically, Kane ensured that the opening balance sheet for the Company materially misrepresented its financial condition, ownership, and liabilities for his own benefit.

109. Kane, acting on his own and through associates, prevented the implementation of any effective system of financial controls of internal financial reporting and accounting procedures.

110. Kane, acting on his own and through associates, prevented Dr. Linaburg from implementing effective corporate formalities, preventing shareholder meetings, election of directors, and appointment of corporate officers. As a result, Kane was able to continue his unilateral control and management of Campbells.

111. As a result of Kane's constant oppression, and aware that Campbells hopelessly insolvent, Dr. Linaburg resigned from all active participation in the company in December 2018.

112. Despite repeated demands by Dr. Linaburg to file for bankruptcy protection, and a mountain of debts that could not be paid as they came due, Kane prevented Campbells from filing for bankruptcy protection for over six months after Dr. Linaburg's resignation.

113. Upon information and belief, Kane delayed filing for bankruptcy on behalf of Campbells in part out of personal malice against Dr. Linaburg based on his belief that Dr. Linaburg would ultimately be financially responsible for all of Campbells' debts.

114. As a result of Kane's obstruction, the assets of Campbells were allowed to waste and dissipate, ultimately resulting in over ten million dollars of unsecured debt that has no hope of being repaid in the Campbells bankruptcy.

115. As a result of Kane's waste of Campbells' assets, Dr. Linaburg faces millions of dollars of exposure on various personal guarantees, including the Guaranty in favor of Plaintiff at issue in this case.

116. In the event that it is determined that Defendants are liable to Plaintiff, which liabilities is specifically denied, then Kane is the solely, directly and proximately responsible for any damages sustained by Plaintiff, which damages are specifically denied, related to the food items and services provided after the resignation of Dr. Linaburg in December 2018.

117. In the event that it is determined that Defendants are liable to Plaintiff, which liability is specifically denied, then Kane is jointly and severally liable with Dr. Lianburg and liable over to Dr. Linaburg for contribution and indemnification for any and all sums and costs that may be recovered by Plaintiff from the Defendants in this action.

WHEREFORE, Defendant, Ronald G. Linaburg, D.M.D., respectfully requests that judgment be entered in his favor in an amount to be determined at trial, for his attorney's fees and costs, and for such other and further relief as the Court may deem just and proper.

Respectfully submitted,

THE LYNCH LAW GROUP, LLC


/s/ Michael P. Oliverio, Esq.
Michael P. Oliverio, Esq.
PA ID No. 209399
John J. Heurich, Jr., Esq.
PA ID No. 317155
501 Smith Dr., Suite 3
Cranberry Township, PA 16066
moliverio@lynchlaw-group.com
jheurich@lynchylaw-group.com
(724) 776-8000
Counsel for Defendant, Ronald G. Linaburg, D.M.D.

# CERTIFICATE OF SERVICE

I hereby certify that, on this 26th day of September, 2019, a true and correct copy of the foregoing **ANSWER WITH AFFIRMATIVE DEFENSES AND CROSSCLAIM** was served upon the following as follows:

<u>Via the Court's CM/ECF System</u>:

Gretchen E. Moore, Esq.
Strassburger, McKenna, Gutnick & Gefsky
Four Gateway Center, Suite 2200
444 Liberty Avenue
Pittsburgh, PA 15222
*Counsel for Plaintiff*

Maria Zoee Vathis, Esq.
Bryan Cave Leighton Paisner LLP
161 N. Clark Street, 4300
Chicago, IL 60601
*Counsel for Plaintiff*

<u>Via Process Server</u>:
William T. Kane
Hampton Inn & Suites Grove City
4 Holiday Blvd.
Mercer, PA 16137

/s/ Michael P. Oliverio, Esq.
Michael P. Oliverio, Esq