## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

IN RE:

**5171 CAMPBELLS LAND CO., INC.,**

Debtor.

Bankruptcy Case No. 19-22715-CMB

Chapter 11

---

### DEBTOR'S CHAPTER 11 PLAN OF LIQUIDATION
### DATED NOVEMBER 12, 2019

---

Robert O Lampl, Esq.
Ryan J. Cooney, Esq.
ROBERT O LAMPL LAW OFFICE
223 Fourth Ave, 4th Floor
Pittsburgh, PA 15222
Tel: (412) 392-0330

*Attorneys for the Debtor*

-and-

Kirk B. Burkley, Esq.
Keila Estevez, Esq.
BERNSTEIN-BURKLEY, P.C.
707 Grant Street, Suite 2200
Pittsburgh, PA 15219
Tel: (412) 456-8100

*Attorneys for the Official Committee of
Unsecured Creditors*

# EXHIBIT D

# TABLE OF CONTENTS

ARTICLE I: Definitions ........................................................................... 3

ARTICLE II: Interpretation; Application of Definitions; Rules of Construction; and
Computation of Time........................................................................... 8

ARTICLE III: Administrative Expense Claims........................................ 9

ARTICLE IV: Classification of Claims and Interests ............................ 10

ARTICLE V: Treatment of Allowed Claims Under the Plan................. 11

ARTICLE VI: Treatment of Executory Contracts and Unexpired Leases ............................ 14

ARTICLE VII: Acceptance or Rejection of the Plan ............................. 14

ARTICLE VIII: Means of Implementation of the Plan ......................... 15

ARTICLE IX: Distributions Under the Plan .......................................... 21

ARTICLE X: Disputed Claims............................................................... 24

ARTICLE XI: Abandonment of Property............................................... 25

ARTICLE XII: Conditions Precedent to Effective Date ....................... 26

ARTICLE XIII: Effects of Confirmation ............................................... 26

ARTICLE XIV: Injunctions and Indemnification .................................. 28

ARTICLE XV: Retention of Jurisdiction ............................................... 30

ARTICLE XVI: Miscellaneous Provisions ............................................ 33

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: | Bankruptcy Case No. 19-22715-CMB |
| **5171 CAMPBELLS LAND CO., INC.,** | Chapter 11 |
| Debtor. | |

## DEBTOR'S CHAPTER 11 PLAN OF LIQUIDATION
## DATED OCTOBER 12, 2019

5171 Campbells Land Co., Inc. (the "Debtor"), the above captioned debtor and debtor-in-possession, hereby proposes this Chapter 11 Plan of Liquidation Dated November 12, 2019 (the "Plan").

On July 08, 2019, the Debtor filed its voluntary petition for relief under chapter 11 of the Bankruptcy Code. Prior to the bankruptcy filing, the Debtor operated twenty-seven (27) Perkins Restaurants pursuant to license agreements by and between the Debtor and Perkins & Marie Callender's, LLC ("PMC"). PMC terminated the Debtor's license agreements prior to the bankruptcy filing. Additionally, Store Capital Acquisitions, LLC and StoreMaster Funding XIII, LLC (collectively "Store"), a primary creditor and landlord for the majority of the Debtor's restaurant locations, was seeking the appointment of a receiver for the Debtor's business. As such, this chapter 11 case was initiated to preserve the assets of the estate.

Throughout the course of the instant chapter 11 case, the Debtor has sold the contents (namely, furniture, fixtures and equipment) of seventeen (17) of its twenty-seven (27) restaurants. The remaining ten (10) restaurants have been closed and the contents have been abandoned to Store, which had a first position lien on said contents, pursuant to a settlement agreement approved by the Court on September 5, 2019. All remaining assets of the Debtor, including but not limited to the Real Property, the Settlement Proceeds, and Estate Litigation will be transferred to a Creditors Trust. The Creditors Trust shall be overseen by a Plan Administrator to be selected by the Official Committee of Unsecured Creditors and shall be liquidated for the benefit of Creditors.

Pursuant to the terms of the Plan, the Plan Administrator will conduct an orderly liquidation of the Debtor's assets. The Plan Administrator shall assist in the liquidation of various assets, including the Debtor's Real Property and the prosecution of Estate Litigation and objections to Claims.

1

The Debtor and the Committee believe that higher value can be obtained for the Estate through an orderly liquidation as compared to a forced liquidation which would occur if the case were converted to a chapter 7 proceeding, primarily due to the nature and character of the remaining assets and liabilities of the Estate.

## ARTICLE I
## DEFINITIONS

Unless the context otherwise requires, the following terms, when used in the Plan, shall have the meanings set forth below:

**1.0** **Definitions**

**1.1** **"503(b)(9) Claim"** means an Allowed Claim pursuant to section 503(b)(9) of the Bankruptcy Code.

**1.2** **"Administrative Bar Date"** means the last date on which a request for payment of an Administrative Expense Claim may be filed, as set forth in Section 3.3 of the Plan.

**1.3** **"Administrative Expense Claim"** means a claim for any cost or expense of administration of the Bankruptcy Case allowed under sections 503(b) or 507(b) of the Bankruptcy Code and entitled to priority under 507(a)(l) of the Bankruptcy Code, including, without limitation, (a) fees payable under 28 U.S.C. § 1930, (b) any actual and necessary costs and expenses of preserving the Debtor's estate, (c) any actual and necessary costs and expenses incurred operating the Debtor's business in the ordinary course, and (d) any allowances of compensation and reimbursement of expenses to the extent allowed by Final Order under section 330 or 503 of the Bankruptcy Code.

**1.4** **"Allowed"** means, with respect to a Claim, (a) any Claim that has been listed by a Debtor in the Schedules as liquidated in amount and not disputed or contingent and for which no contrary proof of claim or interest has been filed, (b) any properly and timely filed, liquidated, noncontingent Claim with respect to which no objection to the allowance thereof has been filed within the applicable period fixed by the Plan, the Bankruptcy Code, the Bankruptcy Rules, or a Final Order of the Bankruptcy Court, or (c) any Claim allowed pursuant to the Plan, the Confirmation Order or a Final Order of the Bankruptcy Court. Unless otherwise specified in the Plan or in a Final Order allowing such Claim, "Allowed" in reference to a Claim shall not include (a) interest on the amount of such Claim accruing from and after the Petition Date, (b) punitive or exemplary damages, or (c) any fine, penalty or forfeiture.

**1.5** **"Allowed Amount"** means the sum at which a Claim is Allowed.

**1.5** **"Allowed Claim(s)"** means any Claim (a) a proof of which was Filed within the applicable period of limitation fixed by the Court in accordance with Bankruptcy Rule 3003(c)(3) and as to which the Debtor or other party in interest have not Filed an objection on or before the expiration of the time period set forth for the objection to such claim in the Plan, the Bankruptcy

2

Code, the Bankruptcy Rules, or a Final Order, or as to which, and to the extent, any objection has been determined by a Final Order in favor of the relevant Claim Holder; (b) listed on the Schedules as other than disputed, contingent, or unliquidated for which the Debtor has not filed an Objection pursuant to Article IX of the Plan; (c) that has been allowed by a Final Order of the Court (provided, however, that Claims allowed solely for the purpose of voting to accept or reject the Plan shall not be considered Allowed Claims hereunder); and (d) expressly allowed or pursuant to the terms of the Plan.

    **1.6**    **"Assets"** means all the assets of the Estate, whether or not reflected in the financial records of the Debtor.

    **1.7**    **"Bankruptcy Case"** means this Chapter 11 Case at Bankruptcy Case Number 19-22715-CMB.

    **1.8**    **"Bankruptcy Code"** means title 11 of the United States Code, 11 U.S.C. § 101 *et seq.*, as amended and in effect as of the Petition Date.

    **1.9**    **"Bankruptcy Court"** or **"Court"** means the United States Bankruptcy Court for the Western District of Pennsylvania.

    **1.10**    **"Bankruptcy Rules"** means (a) the Federal Rules of Bankruptcy Procedure as promulgated by the United States Supreme Court under 8 U.S.C. § 2075, and (b) the local rules of the Bankruptcy Court, in each case, as in effect on the Petition Date.

    **1.11**    **"Business Day"** means any day other than (a) a Saturday; (b) a Sunday; and (c) any other day on which the Court is required or authorized to close.

    **1.12**    **"Cash"** means legal tender of the United States of America.

    **1.13**    **"Cash Investment Yield"** means the net yield earned by the Debtor from the investment of Cash held pending Distribution in accordance with the provisions of the Plan.

    **1.14**    **"Causes of Action"** means any and all actions, causes of action, liabilities, obligations, rights, suits, debts, sums of money, damages, judgments, claims, remedies (including without limitation any remedy based on theories of equitable subordination or similar equitable relief) and demands whatsoever, whether known or unknown, existing or hereafter arising, in law, equity, or otherwise, based in whole or in part upon any act or omission or other event occurring prior to the Petition Date or during the course of the Bankruptcy Case, including through the Effective Date.

    **1.15**    **"Claim"** means any claim against the Debtor, whether or not asserted, known or unknown, as the term "claim" is defined in section 101(5) of the Bankruptcy Code.

    **1.16**    **"Claim Holder"** means any holder of claims in any class, as defined herein, entitled to receive a Distribution under the Plan, whether or not such Claims were Allowed Claims on the Effective Date.

    **1.17**    **"Class"** means each of the groups of substantially similar Claims classified in Article II of the Plan and pursuant to section 1129(a)(1) of the Bankruptcy Code.

    **1.18**    **"Collateral"** means any property or interest in property of the Debtor's Estate that is subject to a valid lien to secure the payment or performance of a Claim, which lien is not subject to avoidance or otherwise invalid under the Bankruptcy Code or applicable state law.

**1.19** **"Committee"** means the Official Committee of Unsecured Creditors appointed by the United States Trustee in Bankruptcy Case on August 01, 2019 to represent unsecured creditors of the Debtor, as that committee may be constituted from time to time.

**1.20** **"Confirmation Date"** means the date on which the Confirmation Order is entered on the docket of the Bankruptcy Court.

**1.21** **"Confirmation Hearing"** means the hearing held by the Bankruptcy Court to consider confirmation of the Plan, as it may be adjourned or continued from time to time.

**1.22** **"Confirmation Order"** means the order of the Bankruptcy Court confirming the Plan pursuant to section 1129 of the Bankruptcy Code.

**1.23** **"Court Order"** means any order entered in the Bankruptcy Case by the Court.

**1.24** **"Creditors Trust"** means the account for the benefit of the Estate's creditors to be disbursed in accordance with the provisions of this Plan by the Plan Administrator.

**1.25** **"Debtor"** means 5171 Campbells Land Co., Inc.

**1.26** **"Debtor in Possession"** means the Debtor in its capacity as debtor-in-possession in the Bankruptcy Case under Sections 1101, 1107(a), 1108, and 1116 of the Bankruptcy Code.

**1.27** **"Disallowed"** means a Claim that has been disallowed by Final Order when used with respect to a Claim.

**1.28** **"Disclosure Statement"** means the Disclosure Statement to the Plan, including the exhibits, appendices and schedules thereto, as the same may be amended, modified or supplemented from time to time and as approved by the Bankruptcy Court pursuant section 1125 of the Bankruptcy Code.

**1.29** **"Disputed"** means, with respect to any Claim, any Claim that is not Allowed or disallowed, or any Claim with respect to which an objection has been filed and is pending before the Bankruptcy Court.

**1.30** **"Disputed Claim"** means any Claim against the Debtor (i) that the Debtor has scheduled as unliquidated, disputed, or contingent, (ii) to which a party in interest has objected, or (iii) that has not become an Allowed Claim. Wherever in the Plan the word "Disputed" precedes a defined term describing a Claim, that phrase will mean a Disputed Claim of the type described.

**1.31** **"Disputed Claim Amount"** means, with respect to a Disputed Claim, (a) if a liquidated amount is set forth in the proof of claim relating to such Claim, (i) the liquidated amount set forth in the proof of claim relating to such Claim, (ii) an amount agreed to by the Debtor and the holder of such Claim, or (iii) if a request for estimation if filed by any party, the amount at which such Claim is estimated by the Bankruptcy Court, (b) if no liquidated amount is set forth in the proof of claim relating to such Claim, (i) an amount agreed to by the Debtor and the holder of such Claim or (ii) the amount estimated by the Bankruptcy Court with respect to such Claim, or (c) if such Claim was listed on the Schedules as unliquidated, contingent, or disputed and no proof of claim was filed, or deemed to have been filed, by the applicable deadline to file such Claim and such Claim has not been resolved by written agreement of the Debtor and the holder of such Claim or by an order of the Bankruptcy Court, zero.

**1.32** **"Distribution(s)"** means the distributions of Cash or other property of the Estate to be made in accordance with the Plan from the Creditors Trust.

**1.33** **"Effective Date"** is the date of the entry of the Confirmation Order, *provided that* all of the conditions precedent set forth in section 12.2 hereof are satisfied. If a stay of the Confirmation Order is in effect on that date, the Effective Date will be the first Business Day after that date on which no stay of the Confirmation Order is in effect, provided that the Confirmation Order has not been vacated and provided that all of the conditions precedent set forth in section 12.2 hereof are satisfied.

**1.34** **"Entity"** means an entity as defined in section 101(15) of the Bankruptcy Code.

**1.35** **"Estate"** means the estate of the Debtor created by section 541 of the Bankruptcy Code upon commencement of the Bankruptcy Case.

**1.36** **"Estate Litigation"** means all claims, Causes of Action and Recovery Actions of the Estate against third parties, including but not limited to, claims and causes of action against the Debtor's shareholders and/or investors and/or any litigation or claims instituted or asserted by the Plan Administrator prior to the Effective Date or which may be brought on behalf of the Debtor by the Plan Administrator to recover causes of action, preferences, fraudulent conveyances or avoidance actions of any kind whatsoever.

**1.37** **"File"** or **"Filed"** means, with respect to any pleading, entered on the docket of the Bankruptcy Case and properly served in accordance with the Bankruptcy Rules.

**1.38** **"Final Order"** means an order or judgment of the Court entered by the Clerk of the Bankruptcy Court on the docket in the Bankruptcy Case which has not been reversed, vacated or stayed and as to which (a) the time to appeal, petition for certiorari or move for a new trial, re-argument or rehearing has expired and as to which no appeal, petition for certiorari or other proceeding for a new trial, re-argument or rehearing shall then be pending, or (b) if an appeal, writ of certiorari, new trial, re-argument or rehearing thereof has been sought, such order or judgment of the Court shall have been affirmed by the highest court to which such order was appealed or certiorari shall have been denied or a new trial, re-argument or rehearing shall have been denied or resulted in no modification of such order and the time to take any further appeal, petition for certiorari or move for a new trial, re-argument or rehearing shall have expired; *provided, however*, that the possibility that a motion under Rule 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules, may be filed relating to such order shall not cause such order not to be a Final Order.

**1.39** **"Impaired"** means, with respect to any Claim, a Claim with respect to which the Plan alters the legal, equitable or contractual rights to which such Claim entitles its holder.

**1.40** **"Insider"** shall have the same meaning as more fully defined in Section 101(31) of the Bankruptcy Code.

**1.41** **"Net Recoveries"** means all proceeds of litigation conducted by the Debtor or Plan Administrator, including but not limited to pursuing Recovery Actions, less expenses incurred in such litigation.

5

**1.42** **"Petition Date"** means July 08, 2019, the date on which the Debtor commenced the Bankruptcy Case.

**1.43** **"Plan"** means this Chapter 11 Plan of Liquidation, including all schedules and exhibits hereto or thereto, as the same may be amended, modified or supplemented from time to time in accordance with its terms and applicable provisions of the Bankruptcy Code.

**1.44** **"Plan Administrator"** means the person appointed under Article 8 of the Plan to implement the Plan and act as disbursing agent. The initial Plan Administrator shall be Robert S. Bernstein, Esq.

**1.45** **"Priority Claim"** means any Claim of a kind specified in section 502(i) or 507(a) of the Bankruptcy Code other than an Administrative Expense Claim or a Priority Tax Claim.

**1.46** **"Priority Tax Claim(s)"** means any Claim against the Debtor to the extent entitled to priority in payment as specified in sections 502(i) and 507(a)(8) of the Bankruptcy Code.

**1.47** **"Professional"** means any person or Entity employed pursuant to a Final Order in accordance with sections 327, 328, or 1103 of the Bankruptcy Code, and to be compensated for services rendered prior to and including the Confirmation Date pursuant to sections 327, 328, 329, 330, or 331 of the Bankruptcy Code.

**1.48** **"Proof of Claim"** means any proof of claim filed with the Bankruptcy Court with respect to the Debtor pursuant to Bankruptcy Rules 3001 or 3002.

**1.49** **"Proponents of the Plan"** means the Debtor and the Committee.

**1.50** **"Ratable Proportion"** means, with reference to any Distribution on account of any Allowed Claim in any Class, the ratio (expressed as a percentage) that the amount of the Allowed Claim bears to the aggregate amount of all Allowed and Disputed Claims in that Class.

**1.51** **"Real Property"** means the vacant land located at 5171 Campbells Run Road, Pittsburgh, PA 15205.

**1.52** **"Recovery Actions"** means, collectively and individually, without limitation, preference Claims or Causes of Action, fraudulent conveyance Claims or Causes of Action, rights of setoff and other Claims and Causes of Action under sections 510, 542, 544, 545, 547, 548, 549, 550, and 553 of the Bankruptcy Code and other applicable bankruptcy and non-bankruptcy law.

**1.53** **"Schedules"** means the schedules, statements and lists filed by the Debtor with the Bankruptcy Court pursuant to Bankruptcy Rule 1007, as they have been and may be amended or supplemented from time to time.

**1.54** **"Sale Proceeds"** means funds generated from the sale of the Debtor's furniture, equipment, and fixtures as approved by the Bankruptcy Court on September 05, 2019 and September 19, 2019.

**1.55** **"Secured Claim(s)"** means a Claim secured by Collateral.

**1.56** **"Secured Creditor(s)"** means a creditor holding a Secured Claim.

**1.57** **"Settlement Proceeds"** means the proceeds received by the Debtor pursuant to the settlement agreement approved by the Court on September 05, 2019, between the Debtor and Store Capital Acquisitions, LLC and Store Master Funding XIII, LLC.

**1.58** **"Unimpaired"** means a Claim that is not Impaired within the meaning of section 1124 of the Bankruptcy Code and paragraph 1.39, above.

**1.59** **"United States Trustee"** means the United States Trustee appointed under 28 U.S.C. § 591 to serve in the Western District of Pennsylvania.

**1.60** **"Unsecured Claim"** means any Claim that is neither secured nor entitled to priority under the Bankruptcy Code or by a Final Order of the Bankruptcy Court, including, but not limited to: (a) any claim arising from the rejection of an executory contract or unexpired lease under section 365 of the Bankruptcy Code, and (b) any portion of a Claim to the extent the value of the holder's interest in the Estate's interest in the property securing such Claim is less than the amount of the Claim, or to the extent that the amount of the Claim subject to setoff is less than the amount of the Claim, as determined pursuant to section 506(a) of the Bankruptcy Code.

## ARTICLE II

### INTERPRETATION; APPLICATION OF DEFINITIONS; RULES OF CONSTRUCTION; AND COMPUTATION OF TIME

Wherever from the context it appears appropriate, each term stated in either the singular or the plural shall include both the singular and the plural, and pronouns stated in the masculine, feminine, or neuter gender shall include the masculine, feminine, and neuter. For purposes of the Plan: (a) any reference in the Plan to a contract, instrument, release, indenture, or other agreement or document being in a particular form or on particular terms and conditions means that the document shall be substantially in that form or substantially on those terms and conditions; (b) any reference in the Plan to an existing document or exhibit Filed or to be Filed means the document or exhibit as it may have been or may be amended, modified, or supplemented; and (c) unless otherwise specified, all references in the Plan to Articles, Schedules, and Exhibits are references to articles, schedules, and exhibits of or to the Plan. Unless otherwise specified, the words "herein," "hereof," "hereto," "hereunder," and other words of similar meaning refer to the Plan as a whole and not to any particular article, section, subsection, or clause contained in the Plan. A capitalized term used but not defined herein shall have the meaning given to that term in the Bankruptcy Code. The rules of construction contained in section 102 of the Bankruptcy Code shall apply to the construction of the Plan.

The headings in the Plan are for convenience of reference only and shall not expand, limit, or otherwise affect the provisions of the Plan. Unless otherwise indicated herein, all references to dollars are to United States dollars.

Unless otherwise expressly provided herein, in computing any period of time prescribed or allowed by the Plan, the provisions of Bankruptcy Rule 9006(a) shall apply. If any payment or act under the Plan is required to be made or performed on a date that is not a Business Day, then the making

of such payment or the performance of such act may be completed on the next succeeding Business Day, but shall be deemed to have been completed as of the required date.

## ARTICLE III

### ADMINISTRATIVE EXPENSE CLAIMS

**3.1    Administrative Expense Claims**

Each Allowed Administrative Expense Claim shall be paid in accordance with treatment of Class 4 Claims, below.

### 3.1.1 Judicial Fees

All fees comparable to the fees payable pursuant to 28 U.S.C. § 1930, if and to the extent due, shall be paid in accordance with treatment of Class 4 Claims, below. The Plan Administrator shall timely pay post-confirmation quarterly fees assessed pursuant to 28 U.S.C. § 1930(a)(6) until such time as the Bankruptcy Court enters a final decree closing this Bankruptcy Case, or enters an order either converting this case to a case under Chapter 7 of the Bankruptcy Code or dismissing this case. The Plan Administrator shall file with the Bankruptcy Court, and shall transmit to the United States Trustee, a true and correct statement of disbursements made by the Plan Administrator for each month that this Bankruptcy Case remains open, in a format prescribed by the United States Trustee.

**3.2    Professional Compensation**

Robert O Lampl Law Offices and Bernstein-Burkley, P.C. are beneficiaries of escrows funds created by one or more orders approving sales. To the extent the respective escrow amounts are in excess of the respective Allowed Chapter 11 Administrative Expense Claims, the excess escrow funds shall be paid over to the Plan Administrator on demand, to be added to the general assets of the Creditors Trust, to be administered under this Plan. To the extent that the respective escrow amounts are insufficient to pay Allowed Chapter 11 Administrative Expense Claims, the remainder of said claims shall be included in Class 4.

Professionals or other Entities asserting Administrative Expense Claims based on professional services rendered or benefit to the Estate allegedly conferred before the Confirmation Date must

8

File and serve the counsel to the Debtor, counsel for the Committee, and the Plan Administrator, and such other Entities as are designated by the Bankruptcy Code, the Bankruptcy Rules, the Confirmation Order, or any other order of the Court, an application for final allowance of such Claim no later than thirty (30) days after the Confirmation Date.

### 3.3    Administrative Bar Date

Any request for the payment of an Administrative Expense Claim (other than (i) the Administrative Expense Claims of Professionals, which are addressed in Section 3.2) shall be discharged and barred forever and shall not be enforceable against the Debtor or any of the property of the Estate, unless such request for the payment of an Administrative Expense Claim is Filed and served upon the Debtor and the Plan Administrator within fifteen (15) days after the Confirmation Date. Notwithstanding the above, in accordance with 11 USC § 503(b)(2)(D), this Plan section shall not be applicable to taxes, penalties and interest, if any, incurred by the Estate.

## ARTICLE IV

## CLASSIFICATION OF CLAIMS AND INTERESTS

### 4.1    Classified Claims

The categories of Claims listed below classify Claims for all purposes, including voting, confirmation, and distribution pursuant to the Plan and pursuant to sections 1122 and 1123(a)(1) of the Bankruptcy Code. A Claim shall be deemed to be classified in a particular Class only to the extent that such Claim qualifies within the description of that Class, and shall be deemed classified in a different Class to the extent that the remainder of such Claim qualifies within the description of such different Class. A Claim is in a particular Class only to the extent that such Claim is Allowed in that Class and has not been otherwise settled prior to the Effective Date.

The classification of Claims against the Debtor pursuant to the Plan are as follows:

| Class | Class Name | Status |
|-------|-----------|--------|
| Class 1 | Secured Claim of First National Bank | Unimpaired – Deemed to have accepted the Plan and not entitled to vote |
| Class 2 | Secured Claim of L-Four L.P. | Unimpaired – Deemed to have accepted the Plan and not entitled to vote |
| Class 3 | Other Secured Claims | Impaired—entitled to vote |

| Class 4 | Administrative Claims | Impaired—entitled to vote |
| Class 5 | Priority Tax Claims | Impaired—entitled to vote |
| Class 6 | General Unsecured Claims | Impaired—entitled to vote |
| Class 7 | Equity Interests | Impaired – Deemed to have rejected the Plan and not entitled to vote |

The treatment of Claims against the Debtor is more fully set forth in Article V.

### 4.2    Bar Date for Claims

The Bankruptcy Court set December 24, 2019 as the Bar Date for general prepetition Claims, and January 06, 2020, as the Bar Date for government Claims. As set forth in Article X hereof, the Plan Administrator may review and object to any such Claim within 120 days after the later of: (a) the Effective Date, or (b) the date on which such Claim was filed with the Bankruptcy Court; provided, however, that such 120 day period of review may be extended by the Bankruptcy Court upon the request of the Plan Administrator after notice and a hearing.

### ARTICLE V

### TREATMENT OF ALLOWED CLAIMS UNDER THE PLAN

The following treatment set forth in this Article V shall be accorded to Claims against the Debtor.

### 5.1    Class 1:  Secured Claim of First National Bank

Class 1 shall consist of First National Bank, a Secured Creditor of the Debtor. First National Bank holds a first lien on the Real Property. In the liquidation process, the Plan Administrator will liquidate the Real Property.  The Plan Administrator may engage a broker to sell the Real Property. The Class 1 Secured Claim shall be paid in full upon the sale of the Real Property at closing, after full payment of the Plan Administrator's expenses incurred in sale process of the Real Property.

The Plan Administrator reserves the right to abandon the Real Property in the event the amount of the Secured Claim exceeds the value of the Real Property.

Class 1 is Unimpaired and is deemed to have accepted the Plan and is not entitled to vote.

### 5.2    Class 2: Secured Claim of L-Four, L.P.

Class 2 shall consist of L-Four, L.P., a Creditor the Debtor. L-Four, L.P. holds judgment liens against the Real Property. The Debtor disputes the validity of L-Four, L.P.'s Secured Claim. The

Class 2 Secured Claim shall be paid upon the sale of the Real Property, after full payment of the Plan Administrator's expenses incurred in sale process of the Real Property and payment in full of all Allowed Class 1 Claims, to the extent allowed, if any, following the adjudication of a claim objection to be filed by the Plan Administrator. In the event that the Bankruptcy Court determines that L-Four, L.P.'s Claim is wholly or partially unsecured, such portion of the Claim shall be treated under Class 6 as set forth herein.

Class 2 is Unimpaired and is deemed to have accepted the Plan and is not entitled to vote.

### 5.3    Class 3: Other Secured Claims

Class 3 shall consist Ascentium Capital, LLC ("Ascentium"), GSG Financial ("GSG"), Tri State Equipment ("Tri State"), US Foodservice Rec. Corp. ("US Foods"). Ascentium, GSG, and Tri State were identified as having purchase money security interests in unidentified restaurant equipment. The unidentified equipment was either sold pursuant to a court approved sale or was abandoned to Store pursuant to a court approved settlement. In the event the unidentified equipment was sold, Ascentium, Tri State, and GSG would potentially have a lien on the sales proceeds. Similarly, US Foods held a pre-petition UCC in the Debtor's furniture, fixtures, and equipment, which has either been sold as approved by the Bankruptcy Court or abandoned to Store.

Pursuant to the sale orders (See Doc. Nos. 234,235, 244, 278) certain distributions were approved to be made from the Sales Proceeds. It is not anticipated that there will be any excess Sale Proceeds following said approved distributions. However, in the event that excess Sale Proceeds exist after the approved distribution, the Plan Administrator shall make a distribution to holders to Class 3 Claims pursuant to the holders' respective priority in the Sale Proceeds. To the extent that Class 3 Claims are not satisfied from excess Sale Proceeds, such Claims shall be treated as general unsecured claims and shall receive payment as set forth under Class 6 herein.

Class 3 is Impaired, and the holders of Class 3 Claims are entitled to vote to accept or reject the Plan.

### 5.4    Class 4: Administrative Claims

Class 4  shall consist of fees to the U.S. Trustee, the Clerk of Courts and any professional's fees that are entitled to priority under 11 U.S.C. Section 507(a)(1).  These shall include the following:

    i.     Attorneys for the Debtor, Robert O Lampl Law Office; and

    ii.    Attorneys for the Committee, Bernstein-Burkley, P.C.

This Class shall also include administrative expenses incurred during the Administration, including the following:

i.    Internal Revenue Service, if any;

ii.   Allowed 503(b)(9) Claims;

iii.  Allowed 503(b)(1)(A) Claims;

iv.   Claims for any unpaid ongoing expenses accrued during the course of the Debtor's operation, if any;

v.    All U.S. Trustee's fees and Clerk of Bankruptcy Court charges, if any; and

vi.   All professional fees are subject to the Bankruptcy Court's approval under Section 330(a)(1) of the Bankruptcy Code and Bankruptcy Rule 2016(a); and only to the extent professionals preserved the estate.

Funds to pay the Administrative Claims of the Robert O Lampl Law Office and Attorneys for the Committee have been carved-out from the Sale Proceeds and are being held in Escrow. To the extent that the respective escrow amounts are insufficient to pay Allowed Chapter 11 Administrative Expense Claims, the remainder of said claims shall be included in Class 4. Additionally, each holder of an Allowed Administrative Claim, in full and complete satisfaction of such claim, shall receive Ratable Proportion distribution as funds become available through the orderly liquidation process.

Class 4 is Impaired, and the holders of Class 4 Claims are entitled to vote to accept or reject the Plan.

**5.5    Class 5:   Priority Claims**

Class 5 shall consist of  all Allowed Priority Tax Claims of the Internal Revenue Service, Department of Revenue and Taxes specified in 11 U.S.C. § 507(a)(8). Class 5 Claims shall receive Ratable Proportion distribution as funds become available through the orderly liquidation process once all Allowed Class 4 Claims have been paid in full.

Class 5 is Impaired, and the holders of Class 5 Claims are entitled to vote to accept or reject the Plan.

**5.6    Class 6:   General Unsecured Claims**

Class 6 consists of all Allowed General Unsecured Claims against the Debtor.  As soon as practicable after the Effective Date, each holder of an Allowed Unsecured Claim, in full and complete satisfaction of such claim, shall receive Ratable Proportion distribution as funds become

available through the orderly liquidation process once all Allowed Class 4 Claims and Class 5 Claims have been paid in full.

Class 6 is Impaired, and the holders of Class 6 Claims are entitled to vote to accept or reject the Plan.

### 5.7    Class 7:  Equity Interests

Class 7 consists of all Equity Interests in the Debtor.  The Equity Interest owners of the Debtor shall not receive any distribution nor retain any property on account of their Equity Interests under the Plan unless and until all of the Allowed Claims in Class 1, 2, 3, 4, 5 and 6 have been paid in full.  As of the Effective Date, all Equity Interests and all certificates, documents and other instruments underlying Equity Interests shall be canceled.

Class 7 is Impaired, because no distributions are anticipated to be made to the holders of Class 7 Equity Interests nor will such holders retain any property on account of their Equity Interests, such holders are deemed to have rejected the Plan pursuant to Section 1126(g) of the Bankruptcy Code and are not entitled to vote to accept or reject the Plan.

### ARTICLE VI

### TREATMENT OF EXECUTORY CONTRACT AND UNEXPIRED LEASES

### 6.1    Rejection of Unexpired Pre- and Post-Petition Leases and Executory Contracts

As of the Effective Date and to the extent not already rejected, all pre-petition executory contracts and unexpired leases to which the Debtor is a party shall be deemed rejected.  If any such lease or contract is deemed rejected by this provision, the counter-party shall file any claim for rejection damages within thirty (30) days after the Confirmation Date or such claim will be forever barred.

### 6.2    Rejection Damages

Claims of any counter party, if any, to any rejected executory contract or lease shall be paid as a Class 6 Claim.

### ARTICLE VII

### ACCEPTANCE OR REJECTION OF THE PLAN

### 7.1    Holders of Claims Entitled to Vote

Classes 3 through 6 are Impaired under the Plan. Each holder of an Allowed Claim in these Classes shall be entitled to vote to accept or reject the Plan.

**7.2     Acceptance by Impaired Classes**

Any Class of Impaired Claims shall be deemed to have accepted the Plan if (a) the holders (other than any holder designated under section 1126(e) of the Bankruptcy Code) of at least two-thirds in dollar amount of the Allowed Claims actually voting in such Class have voted to accept the Plan and (b) the holders (other than any holder designated under section 1126(e) of the Bankruptcy Code) of more than one-half in number of the Allowed Claims actually voting in such Class have voted to accept the Plan.

**7.3     Non-Consensual Confirmation**

To the extent any Class is deemed to have rejected the Plan, the Plan shall be "crammed down" on the claimants within such Class pursuant to Section 1129(b) of the Bankruptcy Code.

## ARTICLE VIII

## MEANS OF IMPLEMENTATION OF THE PLAN

**8.1     Plan Administrator**

The Plan shall be implemented and administered by Robert S. Bernstein, Esq, as Plan Administrator.

The Assets of the Estate will vest or re-vest in the Plan Administrator pursuant to Section 13.1 of the Plan and will be liquidated by the Plan Administrator. The Plan will be funded by proceeds of the Estate Litigation and the sale of the Real Property.

The assets of the Estate, including the proceeds from the sale of the Real Property, the Settlement Proceeds, and the proceeds of the Estate Litigation will make up the Creditors Trust and be distributed to creditors holding Allowed Claims.

After payment of Allowed Secured Claims and Plan Administrator expenses and fees from the monetization of the Debtor's assets subject to those Allowed Secured Claims, and after expenses of the Plan Administrator incurred through the monetization of the remaining assets, and after

reserving a reasonable amount to fund anticipated plan administration expenses, the net proceeds will be distributed to holders to Allowed Claims as required under the Plan. The timing and number of distributions shall be within the reasonable discretion of the Plan Administrator.

### 8.1.1   The Plan Administrator

The Plan Administrator shall be deemed the representative of the Estate in accordance with section 1123 of the Bankruptcy Code and shall have all powers, authority, and responsibilities specified in the Plan, including, without limitation, the powers of a trustee under sections 704 and 1106 of the Bankruptcy Code and all of the Estate's Assets shall vest with the Plan Administrator for purposes of carrying out the provisions of this Plan.

### 8.1.2   Responsibilities of the Plan Administrator

The Plan Administrator will have those responsibilities created by this Plan upon the terms and conditions summarized herein and will, for the benefit of the Claimants, exercise the rights and powers vested in it by this Plan in the same manner, and use the same degree of care and skill in their exercise, as a prudent person would exercise and use under the circumstances in the conduct of its own affairs, notwithstanding Section 345, and further agrees to receive and disburse all of the Assets in accordance with the terms hereof.

(a)   The Plan Administrator is empowered, in his sole discretion (subject to paragraphs (b) and (c) below), to:

i.   perform all of the obligations and agreements of the Plan provided for herein;

ii.   reserve sufficient funds for the orderly liquidation process of all remaining Assets;

iii.   control the liquidation and/or disposition of all remaining Assets after confirmation of the Plan and reduce such assets to Cash or to abandon any such Assets, in the exercise of its reasonable discretion. The Plan Administrator shall have sole discretion as to the disposition of any Assets and may do so without obtaining Bankruptcy Court approval, except where Bankruptcy Court approval is required under a specific provision of this Plan. The Plan Administrator shall cause the distribution of the Assets of the Estate in accordance with the terms of this Plan;

iv.   keep and maintain bank accounts in the name of the Estate into which the Plan Administrator shall deposit all proceeds resulting from the initial receipt or from the sale or other disposition of, or from the income resulting from, all or any part of the Assets of the Estate, without the restrictions of §345(b) of the Bankruptcy Code. The Plan Administrator shall not permit any person other than

a designated representative of the Plan Administrator to have authority to make withdrawals from, or to issue drafts against, any accounts maintained with any bank, unless such bank has been furnished a copy of this Plan;

v.      commence or continue Recovery Actions for the purpose of liquidating the Assets of the Estate or maximizing the value of the Estate;

vi.      terminate or provide for the termination of all employee benefit plans of the Debtor;

vii.      possess the right to object to any Claims (disputed or otherwise), and to compromise or settle any Claims prior to objection without supervision or approval of the Court, free of any restrictions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules of the Court, and the guidelines and requirements of the United States Trustee, other than those restrictions expressly imposed by the Plan or the Confirmation Order; and/or to seek Bankruptcy Court approval, on a periodic basis, for any Claims settlements made;

viii.      market, negotiate and enter into and perform agreements for the sale or other disposition of the Assets as may be required by the Plan or the United States Bankruptcy Court; as may be required by the Plan;

ix.      seek a determination of tax liability under Section 505 of the Bankruptcy Code and to pay taxes, if any, related to the Debtor, Estate or the sale of the Assets of the Debtor or Estate;

x.      collect, receive, and give receipt for all sums of money or other property due to the Debtor or Estate and, if necessary, foreclose upon any security agreement or the like securing any liability or obligation owed to the Debtor or the Estate or liquidate any securities held by the Plan Administrator as a pledge and/or take any other actions necessary to the collection, receipt or disposition of any Assets of the Estate;

xi.      compromise or settle disputes with respect to debt obligations owed to the Debtor or the Estate;

xii.      execute and deliver all releases, satisfactions and termination statements as may be required in connection with full payment of any debt obligation secured by any lien or security interest;

xiii.      enter into financing agreements to the extent necessary to supplement the cash flow of the Estate so as to allow the Plan Administrator to maximize the liquidation value of the Assets, maximize the amounts collected pursuant to Recovery Actions and minimize amounts paid to settle liabilities, including but not limited to disputes;

xiv.      engage and compensate professionals, including attorneys, accountants, investment advisors and others, to assist the Plan Administrator in carrying out its duties hereunder which professionals include, without limitation, those retained to assist the Plan Administrator in any litigation related to the

16

liquidation of the Assets as well as the Estate Litigation or the settlement of the Liabilities. All professionals  employed by the Plan Administrator shall be compensated by the Estate;

     xv.     file or cause to be filed all required tax returns for the Estate and pay any and all taxes, if any, when due from the Assets of the Estate;

     xvi.     in its sole discretion, settle, compromise, litigate to a final judgment, or abandon any Cause of Action, Disputed Claim, or Claim Objection, including but not limited to adversary proceedings brought under Chapter 5 of the Bankruptcy Code; and

     xvii.     reconcile any Claims unless such allowance or settlement involves a payment to the Claimant or offset of amounts owing by the Claimant.

### 8.1.3   Compensation of the Plan Administrator

In lieu of any commission or fees which may be fixed by applicable law for trustees or fiduciaries (and which are hereby waived by the Plan Administrator), the Plan Administrator and his agents, accountants, professionals and any other persons retained by him shall be compensated from the Assets of the Estate based on his standard hourly rate then in effect (and the standard hourly rates of others in his office then in effect, as applicable), plus reimbursement of reasonable and necessary expenses shall also be compensated.  The Plan Administrator shall be entitled to reimbursement from the Assets of the Estate (other than amounts held in the Escrow required for allowed pre-confirmation fees of Professionals) of all out-of-pocket expenses, and costs and expenses of distributions.  The Plan Administrator shall exercise its own business judgment to assure that the duties of the Plan Administrator are performed on the most economical basis to the Estate. Such reimbursement shall be paid as of each month end consummated during the reporting period, without the need to obtain Court Approval.

### 8.1.4   Claims Against the Plan Administrator

In accepting this assignment, the Plan Administrator acts solely as advisor hereunder, and all Persons having any claim against the Plan Administrator in connection with its performance of its rights, powers and duties as such Plan Administrator shall look only to the Assets of the Estate for payment or satisfaction thereof.

### 8.1.5   Commingling of Assets of the Estate and Liquidating Plan Proceeds.

The Plan Administrator shall not commingle any of the Assets of the Estate with its own property or the property of any other Person.

**8.2    Recovery Actions**

Any recovery on any Recovery Action, after the Effective Date, shall be property of the Estate and entitled to the full amount recovered by way of the Recovery Action from any party that received an avoidable transfer and the net amount of such recovery (after reasonable expenses of recovery) shall be used to fund additional distributions under the Plan.  After payment of all fees and expenses of the Plan Administrator, the remaining recoveries shall be paid pro-rata to the Holders of Class 4, 5, and 6 Claims entitled to be paid under the Plan,

**8.3    Maintenance of Books and Records**

Subject to its rights to abandon records under Section 11.1, below, the Plan Administrator shall maintain records and books of account relating to the Estate property.  The Plan Administrator shall file or cause to be filed all required tax returns for the Estate and pay any and all taxes, if any, when due from the Estate.

**8.4    Reliance on Others**

The Plan Administrator may rely upon and shall be protected in acting or refraining from acting upon any certificates, opinions, statements, instruments or reports believed by it to be genuine and to have been signed or presented by the proper person or persons; *provided, however*, that the Plan Administrator shall be under a duty to have examined the same to determine whether or not such writings conform to the requirements of this Plan.

**8.5    Liability for Errors and Omissions**

The Plan Administrator and its agents shall not be liable for any error of business judgment or with respect to any action taken or omitted to be taken, unless it shall be proved that the Plan Administrator or its agents shall have been grossly negligent or shall have acted with willful misconduct in ascertaining the pertinent facts or in performing any of its rights, powers or duties according to this Plan.  The Debtor and the Plan Administrator make no representations as to: (i) the value or condition of the Estate or any part thereof, (ii) the dollar amount, if any, which may be collected as a result of pursuing Estate Litigation, (iii) the amount at which liabilities may be settled, and (iv) the security afforded by this Plan, or as to the validity, execution (except its own execution), enforceability, legality or sufficiency of this Plan, and the Plan Administrator shall incur no liability or responsibility in respect of such matters.

**8.6     Indemnification of the Plan Administrator**

The Plan Administrator and its agents and representatives shall be indemnified by and receive reimbursement from the Estate against and from any and all loss, liability, cost, damage or expense which it may incur or sustain in the exercise and performance of any of its powers and duties pursuant to this Plan unless such loss, liability, cost, damage or expense shall be incurred or sustained as a result of gross negligence or willful misconduct. Other than claims by the Plan Administrator or its agents and representatives for indemnification or reimbursement resulting from their own gross negligence or willful misconduct, all claims of the Plan Administrator its agents and representatives for indemnification or reimbursement shall be first offset by the Plan Administrator against any portion of the Estate used or to be used for payment of Distributions made or to be made in accordance with this Plan.

**8.7     Amendment to Plan Prior to Effective Date**

Subject to further order of the Court, the Debtor reserves the right to amend the Plan and solicit acceptances thereof.

**8.8     Appointment by Bankruptcy Court of Successor to Plan Administrator.**

Following the resignation or removal of the Plan Administrator, any party-in-interest may petition the Bankruptcy Court to appoint a successor as Plan Administrator. The Order appointing the successor Plan Administrator shall act in all respects in accordance with the terms and conditions of the Plan.

**8.9     Committee**

As of the Effective Date, the Committee shall dissolve, and its members shall be released and discharged from all further authority, duties, responsibilities, and obligations relating to and arising from the Bankruptcy Case. The retention and employment of the Professionals retained by the Creditors' Committee shall terminate as of the Effective Date, provided, however, that the Creditors' Committee shall exist, and its Professionals shall be retained, after such date with respect to (a) applications Filed pursuant to sections 330 and 331 of the Bankruptcy Code, (b) motions seeking the enforcement of the provisions of the Plan or the Confirmation Order, and (c) any matter where Committee's Professionals are retained by the Plan Administrator and (d) any matter pending as of the Effective Date until such matter is resolved by a Final Order. Any fees incurred by the Committee's Professionals after the Effective Date shall be paid by the Plan Administrator without the need to file any fee applications or obtain the Court's approval.

## ARTICLE IX

## DISTRIBUTIONS UNDER THE PLAN

### 9.1     Distributions

The Plan Administrator shall make all distributions required under the Plan on account of Allowed Claims. The Plan Administrator may withhold from amounts distributable to any Person and all amounts determined in the Plan Administrator's reasonable sole discretion to be required by any law, regulation rule, ruling, directive or other governmental requirement.  Holders of Allowed Claims, shall as a condition to receiving distributions, provide such information and take such steps as the Plan Administrator may reasonably require to ensure compliance with withholding and reporting requirements and to enable the Plan Administrator to obtain certifications and information as may be necessary or appropriate to satisfy the provisions of any tax law.

### 9.2     Delivery of Distributions

#### 9.2.1 General Provisions; Undeliverable Distributions

Subject to Bankruptcy Rule 9010 and except as otherwise provided herein, Distributions to the holders of Allowed Claims shall be made by the Plan Administrator at (a) the address of each holder as set forth in the Schedules, unless superseded by the address set forth on Proof(s) of Claim Filed by such holder, or (b) the last known address of such holder if no Proof of Claim is Filed or if the Plan Administrator has been notified in writing of a change of address.  If any Distribution is returned as undeliverable, the Plan Administrator may, in its discretion, make such efforts to determine the current address of the holder of the Claim with respect to which the Distribution was made as the Plan Administrator deems appropriate, but no Distribution to any holder shall be made unless and until the Debtor has determined the then-current address of the holder, at which time the Distribution to such holder shall be made to the holder without interest.  Amounts in respect of any undeliverable Distributions made by the Plan Administrator shall be returned to, and held in trust by, the Plan Administrator until the Distributions are claimed or are deemed to be unclaimed property under section 347(b) of the Bankruptcy Code as set forth below.  The Plan Administrator shall have the discretion to determine how to make Distributions in the most efficient and cost-effective manner possible; *provided, however,* that its discretion may not be exercised in a manner inconsistent with any express requirements of the Plan.

### 9.2.2 Minimum Distributions

Notwithstanding anything herein to the contrary, Distributions on Allowed Unsecured Claims for each Claim for which the Distribution is less than fifty dollars ($50), shall not be required to be made and no Holder of an Allowed Unsecured Claim or Interest has a right to receive Distributions under the Plan if the cumulative Distributions on such Allowed Claim would be less than $50 in the aggregate.

### 9.2.3 Unclaimed Property

Except with respect to property not Distributed because it is being held on account of a Disputed Claim, represents a minimum Distribution under Section 9.2.2 above, or is returned undeliverable under Section 9.4 below, Distributions that are not cashed by the claimant by the expiration of three (3) months from the date of the distribution check shall be deemed to be unclaimed property under Section 347(b) of the Bankruptcy Code and shall vest or revest in the Creditor's Trust, and the Claims with respect to which those Distributions are made shall be automatically cancelled. After the expiration of that three month period, the claim of any Entity to those Distributions shall be discharged and forever barred. Nothing contained in the Plan shall require the Plan Administrator to attempt to locate any holder of an Allowed Claim. All funds or other property that vests or revests in the Estate pursuant to this Section shall become the property of the Creditor's Trust as unclaimed property in accordance with section 347(b) of the Bankruptcy Code.

### 9.3    Manner of Cash Payments Under the Plan

Cash payments made pursuant to the Plan shall be in United States dollars by checks drawn on a domestic bank selected by the Plan Administrator or by wire transfer from a domestic bank, at the option of the Plan Administrator.

### 9.4    Place of Distribution

Unless otherwise provided in the Plan, all payments to any holder of an Allowed Claim will be made to the holder of each Allowed Claim at the address of such holder as listed in the Schedules unless the Debtor or the Plan Administrator has been notified, in advance, in writing of a change of address, including, without limitation, by the timely filing of a proof of claim or interest by such holder that provides an address for such holder difference from the address reflected in the Schedules. In the event that any payment to any holder is returned as undeliverable, no further payment to such holder will be made unless the Plan Administrator has been notified of the then current address of such holder, at which time or as soon as reasonably practicable thereafter, such distribution will be made to such holder without interest; provided however, that, such

undeliverable payments will be deemed unclaimed property under Section 347(b) of the Bankruptcy Code at the expiration of six (6) months days after the date of payment (if such holder fails to provide an updated address). After the expiration of the six month period, all unclaimed property or interest in property shall revert to the Creditor's Trust, and the claim of the holder to such property or interest in property shall be discharged and forever barred from assertion against the Estate and its property. The Plan Administrator will have no obligation to attempt to locate any holder of an Allowed Claim other than by reviewing the Schedules, Proofs of Claim timely filed and the Debtor's books and records.

## 9.5    Compliance with Tax Requirements

In connection with making Distributions under this Plan, to the extent applicable, the Plan Administrator shall comply with all tax withholding and reporting requirements imposed on it by any governmental unit, and all Distributions pursuant to this Plan shall be subject to such withholding and reporting requirements. The Plan Administrator may withhold the entire Distribution due to any holder of an Allowed Claim until such time as such holder provides the necessary information to comply with any withholding requirements of any governmental unit. Any property so withheld will then be paid by the Plan Administrator to the appropriate authority. If the holder of an Allowed Claim fails to provide the information necessary to comply with any withholding requirements of any governmental unit within six (6) months from the date of first notification to the holder of the need for such information or for the Cash necessary to comply with any applicable withholding requirements, then such holder's Distribution shall be treated as an undeliverable distribution in accordance with Section 9.2.1.

## 9.6    No Payments of Fractional Cents

Notwithstanding any other provision of the Plan to the contrary, no payment of fractional cents shall be made pursuant to the Plan. Whenever any payment of a fraction of a cent under the Plan would otherwise be required, the actual Distribution made shall reflect a rounding down of such fraction to the nearest whole cent.

## 9.7    Interest on Claims

Unless otherwise expressly provided for in the Plan, the Confirmation Order, other order of the Bankruptcy Court or as required by applicable law, and unless the full principal amounts of all Allowed General Unsecured Claims have been paid or satisfied, postpetition interest shall not accrue or be paid on any Claims.

**9.8     No Distribution in Excess of Allowed Amount of Claim**

Notwithstanding anything to the contrary contained in the Plan, no holder of an Allowed Claim shall receive in respect of that Claim any Distribution in excess of the Allowed amount of that Claim.

**9.9     Setoff and Recoupment**

The Plan Administrator may, but shall not be required to, setoff against, or recoup from, any Allowed Claim and the Distributions to be made pursuant to the Plan in respect thereof, any claims or defenses of any nature whatsoever that the Debtor or the Estate may have against the holder of such Allowed Claim, but neither the failure to do so nor the Allowance of any Claim under the Plan shall constitute a waiver or release by the Plan Administrator or the Estate of any right of setoff or recoupment that any of them may have against the holder of any Allowed Claim.


## ARTICLE X

## DISPUTED CLAIMS

**10.1     Objection Deadline**

All objections to Disputed Claims shall be Filed and served upon the holders of each such Claim(s) within 120 days after the later of:  (a) the Effective Date, or (b) the date on which such Claim was filed with the Bankruptcy Court; unless otherwise ordered by the Bankruptcy Court after notice and a hearing.

**10.2     Estimation of Claims**

The Debtor or the Plan Administrator may request that the Court estimate any contingent or unliquidated Claim to the extent permitted by section 502(c) of the Bankruptcy Code regardless of whether the Debtor or the Plan Administrator has previously objected to such Claim or whether the Court has ruled on any such objection, and the Court shall have jurisdiction to estimate any Claim at any time during litigation concerning any objection to such Claim, including during the pendency of any appeal relating to any such objection.  If the Court estimates any contingent or unliquidated Claim, that estimated amount shall constitute either the Allowed amount of such Claim or a maximum limitation on the Claim, as determined by the Court.  If the estimated amount constitutes a maximum limitation on the Claim, the Plan Administrator may elect to pursue supplemental proceedings to object to the ultimate allowance of the Claim.   All of the aforementioned Claims objection, estimation, and resolution procedures are cumulative and not

exclusive of one another. Claims may be estimated and subsequently compromised, settled, withdrawn, or resolved by any mechanism approved by the Court.

## 10.3   No Distributions Pending Allowance

Notwithstanding any other provision hereof, unless ordered otherwise by a Final Order, if any portion of a Claim is a Disputed Claim, no payment or Distribution provided hereunder shall be made on account of the Allowed portion of the Claim unless and until the Disputed portion of the Claim is Allowed.

## 10.4   Late Filed Claims Not Entitled to Distribution

Any and all Claims filed after the applicable bar date in this case shall not be entitled to a distribution, the Debtor or Plan Administrator is not required to take any further action with respect to said claims, and this Plan shall constitute an objection to any such claim filed after the applicable bar date.

### ARTICLE XI

### ABANDONMENT OF PROPERTY

## 11.1   Abandonment by the Plan Administrator

The Plan Administrator shall have the right to abandon in any commercially reasonable manner any other property that the Debtor or the Plan Administrator reasonably concludes is of no benefit to the Estate or its creditors or that it reasonably determines, at the conclusion of Distributions or dissolution of the Estate, to be too impractical to distribute. Such abandonment shall be (a) effected by a separate Notice or order of the Court on proper notice to the relevant parties and (b) be deemed to have been made under the Plan.

## 11.2   Abandonment Claims

If the abandonment of any asset pursuant to the Plan (including those abandoned pursuant to section 11.1) and the Confirmation Order results in damages to a non-debtor party, any Claim for such damages shall be forever barred and shall not be enforceable against the Debtor, the Estate or its properties, successors, and assigns, unless a Proof of Claim is Filed and served upon counsel for the Debtor and the Plan Administrator on or before thirty (30) days after the later to occur of (a) the entry of the Confirmation Order or (b) the date of the entry by the Court of an order authorizing abandonment of such asset.

## ARTICLE XII

## CONDITIONS PRECEDENT TO CONFIRMATION
## OF THE PLAN AND THE EFFECTIVE DATE

**12.1    Conditions Precedent to the Confirmation of the Plan**

It shall be a condition precedent to the confirmation of the Plan, that the Confirmation Order shall have been entered by the Court.

**12.2    Conditions Precedent to the Effective Date of the Plan**

The Plan shall not become effective and the Effective Date shall not occur unless and until the following conditions shall have been satisfied or waived in accordance with Section 12.3, in the Bankruptcy Cases:

      (a)    The Confirmation Order shall be a Final Order; and,

      (b)    After the entry of the Confirmation Order, no modifications shall have been made to the Plan except in accordance with its provisions with respect to its modification.

**12.3    Waiver of Conditions Precedent**

None of the conditions precedent in Section 12.2 may be waived or modified, in whole or in part, by the Debtor or the Plan Administrator.

## ARTICLE XIII

## EFFECTS OF CONFIRMATION

**13.1    Vesting of Assets**

      (a)    As of the Effective Date, title to the property of the Estate shall vest and/or re-vest in the Plan Administrator subject to the Plan Administrator's obligation to administer, liquidate and distribute the property in accordance with the terms of this Plan.

      (b)    As of the Effective Date, all assets of the Estate shall be free and clear of all claims except as provided for in the Plan or the Confirmation Order.

**13.2   Release of Assets**

The Bankruptcy Court shall retain jurisdiction of the Debtor and its assets and properties until final Distributions are made the Bankruptcy Case is closed.

**13.3   Binding Effect**

Except as otherwise provided in section 1121(d)(3) of the Bankruptcy Code, on and after the Confirmation Date, the provisions of the Plan shall bind any holder of a Claim against the Debtor and its successors and assigns, whether or not the Claim of such holder is impaired under the Plan and whether or not such holder has accepted the Plan.

**13.4   Terms of Injunctions or Stays**

Unless otherwise expressly provided herein, all injunctions or stays arising under or entered during the Bankruptcy Case under sections 105 or 362 of the Bankruptcy Code, or otherwise, and in existence on the confirmation date, shall remain in full force and effect until the closing of the Bankruptcy Case.

**13.5   Estate Litigation**

The Plan Administrator shall retain the exclusive right to enforce any and all Recovery Actions against any person or entity.  The Plan Administrator may pursue, abandon, or release any or all Recovery Actions as it deems appropriate, without the need to obtain approval or any or other further relief from the Bankruptcy Court.  The Plan Administrator, in its sole discretion, may offset any such claim held against a person or entity, against any payment due such person or entity under the Plan.

**13.6   Injunction Against Interference with the Plan**

Upon the occurrence of the Effective Date, all holders of Claims and other parties in interest along with their respective present, future or former employees, agents, officers, directors or principals shall be enjoined from taking any actions to interfere with the implementation or consummation of the Plan.

**13.7   Retention and Preservation of Claim Objections and Estate Litigation**

Pursuant to section 1123(b)(3)(B) of the Bankruptcy Code, upon entry of the Confirmation Order, the Plan Administrator retains the right to object to all Claims and interests asserted against it and all of the Recovery Actions, including without limitation: (1) Recovery Actions under Section 547

of the Bankruptcy Code against those parties receiving payments from the Debtor within 90 days or one year prior to the Petition Date, (2) all claims and Causes of Action disclosed in the Debtor's schedules and Statement of Financial Affairs which are incorporated herein by reference; and (3) any and all claims and Causes of Action that the Debtor held pre-confirmation including, but not limited to, claims for unpaid accounts receivable and fraudulent transfer shall vest or revest in the Debtor except as otherwise provided in this Plan.

Unless a claim or Cause of Action against a creditor or other entity is expressly waived, relinquished, released, compromised or settled in the Plan or any Final Order, the Debtor expressly reserves such claim or Cause of Action for later adjudication by the Plan Administrator (including without limitation, claims and causes of action not specifically identified or which the Debtor may presently be unaware or which may arise or exist by reason of additional facts or circumstances unknown to the Debtor at this time or facts or circumstances which may change or be different from those which the Debtor now believes to exist) and, therefore, no preclusion doctrine, including without limitation, the doctrines of *res judicata*, collateral estoppel, issue preclusion, claim preclusion, waiver, estoppel (judicial, equitable or otherwise) or laches shall apply to such claims or Causes of Action upon or after the confirmation of the Plan based on the Disclosure Statement, the Plan or the Confirmation Order, except for such claims or Causes of Action that have been released in the Plan or any other Final Order.

## ARTICLE XIV

## INJUNCTIONS AND INDEMNIFICATION

### 14.1    Exculpation

The Debtor's court-approved professionals and Committee's members and court-approved professionals as well as Compass Advisory Partners, LLC shall have no liability to any person for any act or omission in connection with, or arising out of, (i) the Disclosure Statement, (ii) the Plan, (ii) the solicitation of votes for, and pursuit of confirmation of, the Plan, (iv) the formulation, preparation, implementation or consummation of the Plan, or (v) the administration of the Plan or any contract, instrument, release or other agreement or document created or entered into in connection with the Plan, except for willful misconduct or gross negligence as determined by a Final Order after exhaustion of all rights of appeal, reconsideration or rehearing and, in all respects, shall be entitled to rely upon the advice of counsel with respect to its duties and responsibilities under the Plan and the Bankruptcy Case.

## 14.2   Discharge

Except as provided in Section 1141 of the Bankruptcy Code, the Plan, or the Confirmation Order, Confirmation of the Plan will (i) discharge the Debtor from any debt that arose before the date of such Confirmation, and any debt of a kind specified in Sections 502(g), 502(h), or 502(i) of the Bankruptcy Code, whether or not – (1) a proof of the Claim based on such debt is filed or deemed filed under Section 501 of the Bankruptcy Code; (2) such Claim is allowed under Section 502 of the Bankruptcy Code; or (3) the holder of such Claim has accepted the Plan.

Except as otherwise provided in the Plan or Confirmation Order, the Confirmation Order shall act as a discharge of any and all Claims against, and all debts and liabilities of, the Debtor, as provided in Sections 524 and 1141 of the Bankruptcy Code, and such discharge shall void any judgment against the Debtor at any time obtained to the extent that it relates to a discharged Claim.

Except as otherwise provided in the Plan or the Confirmation Order, on and after the Effective Date, all persons who have held, currently hold or may hold a debt, Claim discharged pursuant to the terms of the Plan are permanently enjoined from taking any of the following actions on account of any such discharged debt or Claim:  (i) commencing or continuing, in any manner, any action or other proceeding against the Debtor or its respective successors or its respective properties; (ii) enforcing, attaching, collecting or recovering, in any manner, any judgment, award, decree or order against the Debtor or its respective successors or its respective properties; (iii) creating, perfecting or enforcing any lien or encumbrance against the Debtor or its respective successors or its respective properties; and (iv) commencing or continuing any action, in any manner, in any place, that does not comply with or is inconsistent with the provisions of the Plan or the Confirmation Order.  Any person injured by any willful violation of such injunction will recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages from the willful violator.

## 14.3   Injunction

Except as provided in the Plan or the Confirmation Order, as of the Confirmation Date, all entities that have held, currently hold or may hold a Claim or other debt or liability that is discharged, pursuant to the terms of the Plan are permanently enjoined from taking any of the following actions against the Debtor, the Estate, the Plan Administrator or its successors or its properties on account of any such discharged Claims, debts or liabilities: (i) commencing or continuing, in any manner or in any place, any action or other proceeding; (ii) enforcing, attaching, collecting or recovering in any manner any judgment, award, decree or order; (iii) creating, perfecting or enforcing any lien or encumbrance; (iv) asserting a setoff, right of subrogation or recoupment of any kind against any debt, liability or obligation due to the Debtor or the Estate; and (v) commencing or continuing, in

any manner or in any place, any action that does not comply with or is inconsistent with the provisions of the Plan.

### 14.4    No Liability for Tax Claims

Unless a taxing authority has asserted a Claim against the Debtor before the bar date established therefore, no Claim of such authority shall be Allowed against the Debtor for taxes, penalties, interest, additions to tax or other charges arising out of the failure, if any, of the Debtor to have paid tax or to have filed any tax return in or for the period prior to the date on which (i) the bar date occurs as to any Claim that constitutes an Administrative Expense Claim, or (ii) the bar date occurs as to any Claim that constitutes a General Unsecured Claim.

### 14.5    Preservation of Rights of Action

Except as otherwise provided in the Plan or the Confirmation Order, the Plan Administrator, in accordance with section 1123(b) of the Bankruptcy Code, shall retain and shall have the exclusive right to prosecute and enforce any cause of action or rights to payment of claims that the Debtor or its bankruptcy Estate may hold against any person.

### 14.6    Indemnification Obligations

As of the Effective Date, the obligations of the Debtor to indemnify individuals who have served as its respective directors, officers, agents, employees, representatives and others, pursuant to its respective certificates or articles of incorporation, by-laws and applicable statutes in respect of all present and future actions, suits and proceedings against any such officers, directors, agents, employees, representatives and others, based upon any act or omission related to such service with or for or on behalf of the Debtor shall not be discharged or impaired by the confirmation or consummation of the Plan but shall survive unaffected by the reorganization contemplated by the Plan and shall be performed and honored by the Debtor regardless of such confirmation, consummation and reorganization, as may be governed by applicable law.

## ARTICLE XV

## RETENTION OF JURISDICTION

### 15.1    Retention of Jurisdiction

Notwithstanding entry of the Confirmation Order and the occurrence of the Effective Date, the Court shall retain exclusive jurisdiction of all matters arising out of or relating to the Case, the

Plan, the Confirmation Order, and the Estate pursuant to, and for the purposes of, sections 105(a) and 1142 of the Bankruptcy Code and for, among other things, the following purposes:

(a) To resolve any matters relating to the assumption and assignment or rejection of executory contracts or unexpired leases, and to hear, determine and, if necessary, liquidate any Claims resulting therefrom;

(b) To decide and resolve any and all motions, adversary proceedings, including Recovery Actions, applications, contested matters and any other matters, whether pending as of the Effective Date or brought thereafter in accordance with the terms hereof;

(c) To consider and rule on the compromise and settlement of any Claim against, or Cause of Action on behalf of, the Plan Administrator or the Estate;

(d) To ensure that Distributions to holders of Allowed Claims are accomplished as provided herein, and resolve any disputes concerning any such Distributions;

(e) To allow, disallow, determine, liquidate, classify, estimate or establish the priority or secured or unsecured status of any Claim (including any Administrative Expense Claim), and to resolve any and all objections to the Disputed Claims;

(f) To hear and determine any and all applications for the allowance of compensation of Professional for professional services rendered and expenses incurred prior to the Confirmation Date;

(g) To enter such orders as may be necessary or appropriate to implement or consummate the provisions of the Plan and all contracts, instruments, releases and other agreements or documents created in connection with the Plan, including but not limited to any motions filed pursuant to section 363 of the Bankruptcy Code;

(h) To consider any modifications of the Plan, to cure any defect or omission, or reconcile any inconsistency, in the Plan or in any order of the Court as may be necessary to carry out the purposes and intent of the Plan and to implement and effectuate the Plan;

(i) To resolve any cases, controversies, suits or disputes arising in connection with the interpretation, implementation, or enforcement of the Plan or any person's or Entity's obligations incurred in connection with the Plan;

(j) To hear and determine matters concerning state, local, and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code;

(k) To enter and implement such orders as are necessary or appropriate if the Confirmation Order is for any reason modified, stayed, revoked, reversed or vacated;

(l) To enforce remedies upon any default under the Plan;

(m) To enforce, interpret, and determine any disputes arising in connection with any orders, stipulations, judgments, and rulings entered in connection with the Reorganization Case (whether or not the Reorganization Case have been closed);

(n) To resolve any cases, controversies, suits, or disputes that may arise in connection with the consummation, interpretation, or enforcement of the Plan, or any Estate's obligations incurred in connection herewith;

(o) To determine any other matters that may arise in connection with or relate to the Plan, the Disclosure Statement, the Confirmation Order or any contract, instrument, release, indenture, or other agreement or document created in connection with the Plan;

(p) To issue injunctions, enter and implement other orders, or take such other actions as may be necessary or appropriate to restrain interference by any person or Entity with the consummation of the Plan, or the enforcement of any rights, remedies, or obligations created under the Plan;

(q) To determine such other matters as may be provided for in the Confirmation Order or other orders of the Court or as may be authorized under the provisions of the Bankruptcy Code or any other applicable law;

(r) To hear any other matter if the Court's exercise of jurisdiction thereover is not inconsistent with the Bankruptcy Code or title 28 of the United States Code;

(s) To hear and determine issues relating to discharge, injunctions, covenants not to sue, and other waivers and protections provided under or relating to the Plan and

(u) To enter a final decree closing the Case.

### 15.2    Modification of the Plan

#### 15.2.1  Modification Before the Effective Date.

The Proponents of the Plan may alter, amend or modify the Plan or any provision or portion thereof under Section 1127(a) of the Bankruptcy Code at any time prior to the Effective Date; provided, however, that there shall be no material modification to the Plan. The Plan Proponent shall provide parties in interest with notice of such amendments or modifications as may be required by the Bankruptcy Rules or any Order of the Court. A holder of a Claim that has accepted the Plan shall be deemed to have accepted the Plan as altered, amended, modified or clarified unless the proposed alteration, amendment, modification or clarification adversely changes the treatment of the Claim of, or releases granted to, such holder.

#### 15.2.2  Modification Before Substantial Consummation

After the Effective Date but prior to the "substantial consummation" (as that term is defined in section 1101(2) of the Bankruptcy Code) of the Plan, the Debtor may, pursuant to section 1127(b) of the Bankruptcy Code, institute proceedings in the Bankruptcy Court to remedy any defect or omission or to reconcile any inconsistencies in the Plan, the Disclosure Statement, or the Confirmation Order, and otherwise provide for such matters as may be necessary to carry out the purpose and effect of the Plan, as long as the proceedings do not adversely affect the treatment of holders of Claims under the Plan; provided, however, that, to the extent required by the Bankruptcy Rules or an order of the Court, prior notice of any such proceedings shall be served in accordance therewith. A holder of a Claim that has accepted the Plan shall be deemed to have accepted the Plan, as altered, amended, modified, or clarified, if the proposed alteration, amendment, modification, or clarification does not adversely change the treatment of the Claim, or releases granted to, such holder.

#### 15.2.3  Modification After Substantial Consummation

After "Substantial Confirmation" (as that term is defined in section 1101(2) of the Bankruptcy Code) of the Plan, the Plan Administrator may amend the Plan to provide for technical corrections to the Plan provided that such changes do not affect the interests of the claim holders.

## ARTICLE XVI

## MISCELLANEOUS PROVISIONS

### 16.1    Dissolution of the Debtor

On the Effective Date or as soon thereafter as is reasonably practicable, the affairs of the Debtor shall be wound up, and the Plan Administrator is directed to dissolve the Debtor and such dissolution shall be effective without the need for any further action or approval; provided, however, that, to the extent applicable, the entry of the Final Decree in the Bankruptcy Case shall effect such dissolution of the Debtor to the extent permissible under applicable law.

### 16.2    Governing Law

Except to the extent that the Bankruptcy Code or other federal law is applicable, or to the extent a schedule or exhibit hereto or instrument, agreement, or other document executed in connection with the Plan provides otherwise, the rights, duties, and obligations arising under the Plan, and the instruments, agreements, and other documents executed in connection with the Plan, shall be governed by, and construed and enforced in accordance with, the internal laws of the Commonwealth of Pennsylvania, without giving effect to any choice of law provisions that would require the application of the law of any other jurisdiction.

### 16.3    Notices

To be effective, all notices, requests, and demands under the Plan must be in writing (including by facsimile transmission) and, unless otherwise expressly provided herein, shall be deemed to have been duly given or made when actually delivered or, in the case of notice by facsimile transmission, when received and telephonically confirmed, addressed as follows:

<b><u>To Counsel for the Debtor</u>:</b><br>
Robert O Lampl, Esq.<br>
Ryan J. Cooney, Esq.<br>
223 Fourth Ave, 4th Floor<br>
Pittsburgh, PA 15222<br>
Fax: (412) 392-0335

**To Counsel for the Plan Administrator:**
Robert S. Bernstein, Esq.
BERNSTEIN-BURKLEY, P.C.
707 Grant Street, Suite 2200
Pittsburgh, PA 15219
Fax: (412) 456-8135

### 16.4   Further Documents and Actions

The Debtor and the Plan Administrator shall execute, and are authorized to file with the Court and deliver, such agreements and other documents or information, and to take or cause to be taken such actions, as may be necessary or appropriate to effect and further evidence the terms and conditions of the Plan and to consummate the transactions and transfers contemplated by the Plan.  The Debtor, the Plan Administrator, and all other necessary or appropriate parties shall execute any and all documents and instruments that must be executed under or in connection with the Plan in order to implement the terms of the Plan or to effectuate the Distributions under the Plan, provided that such documents and instruments are reasonably acceptable to such party or parties.

### 16.5   Relationship Between the Plan and Disclosure Statement

To the extent that the Plan is inconsistent with the Disclosure Statement, the provisions of the Plan shall be controlling.

### 16.6   Reservation of Rights

If the Plan is not confirmed by a Final Order, or if the Plan is confirmed and does not become effective, the rights of all parties in interest in the Case, including the Debtor, are and will be reserved in full.  Any concessions or settlements reflected herein (if any), are made for purposes of the Plan only, and if the Plan does not become effective, no party in interest shall be bound or deemed prejudiced by any such concession or settlement.

### 16.7   Post-Confirmation Date Fees and Expenses

After the Confirmation Date, the Plan Administrator shall, in the ordinary course of business and without the necessity for any approval by the Court, pay the reasonable fees and expenses of the Professionals employed by the Plan Administrator in connection with the implementation and

34

consummation of the Plan, the claims reconciliation process and any other matters as to which such Professionals may be engaged. The fees and expenses of such Professionals shall be paid within ten (10) Business Days after submission of a detailed invoice therefore to the Plan Administrator. If the Plan Administrator disputes the reasonableness of any such invoice, it shall timely pay the undisputed portion of such invoice, and submit the dispute regarding the balance of such invoice to the Court for a determination of its reasonableness.

## 16.8   Binding Effect

The provisions of this Plan shall be binding on, and shall inure to the benefit of, the Debtor, all holders of Claims or whose actions may be required to effectuate the terms of the Plan, and any current or future heir, executor, administrator, successor, assign or any person or entity claiming derivatively through or because of any of the foregoing (including, but not limited to, any trustee appointed for the Debtor under chapter 7 or 11 of the Bankruptcy Code). The Confirmation Order shall provide that, after the occurrence of the Effective Date, the terms and provisions of the Plan and the Confirmation Order shall survive and remain effective after entry of any order which may be entered converting any of the Reorganization Case to a case under chapter 7 of the Bankruptcy Code, and the terms and provisions of the Plan shall continue to be effective in this or any superseding case under the Bankruptcy Code.

IN WITNESS WHEREOF, the undersigned has duly executed the Plan as of the date first above written.

Dated: November 12, 2019          **5171 CAMPBELLS LAND CO., INC.**

By: */s/ William T. Kane*
Signature of Debtor or Authorized Representative

**ROBERT O LAMPL LAW OFFICE**
By: */s/ Robert O Lampl*
Robert O Lampl
PA I.D. #19809
Ryan J. Cooney
PA I.D. #319213
223 Fourth Ave, 4th Floor
Pittsburgh, PA 15222
(412) 392-0330 (phone)
(412) 392-0335 (facsimile)
rlampl@lampllaw.com

*Attorneys for the Debtor*

35

**BERNSTEIN-BURKLEY, PC,**

By: */s/ Kirk B. Burkley*

Kirk B. Burkley, Esq., PA ID No. 89511
kburkley@bernsteinlaw.com
Keila Estevez, Esq., PA ID No. 324601
kestevez@bernsteinlaw.com
707 Grant Street, 2200 Gulf Tower
Pittsburgh, PA 15219
(412) 456-8100 (phone)
(412) 456-8135 (fax)

*Attorneys for the Official Committee
of Unsecured Creditors*